UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

JAMES E. JOHNSON,                    )
                                     )
                  Plaintiff          )
                                     )
        vs.                          )     CAUSE NO. 3:13-CV-223 RLM
                                     )
MICHAEL A. MITCHEFF,                 )
                                     )
                  Defendant          )

OPINION and ORDER

James Johnson, an inmate in the Indiana Department of Correction, alleges in his second amended complaint, filed pursuant to 42 U.S.C. § 1983, that defendant Michael Mitcheff, in his individual capacity as the DOC's Regional Medical Director for Correctional Medical Services, Inc., denied him adequate medical care and was deliberately indifferent to his serious medical needs in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. Dr. Mitcheff has moved for summary judgment on Mr. Johnson's claims, Mr. Johnson has filed his response, and Dr. Mitcheff his reply. For the reasons that follow, the court grants the defendant's motion.

Mr. Johnson's medical issues relate to the broken jaw he suffered at the hands of another inmate in December 2010. At that time, Mr. Johnson was housed at the Miami Correctional Center where he was admitted to the facility's infirmary and prescribed medication and a liquid diet. Mr. Johnson was seen by a doctor and a dentist, and, a few days later, by an oral surgeon, who performed surgery and stabilized Mr. Johnson's jaw with wires. Over the next few weeks, Mr. Johnson had follow-up appointments with the dentist and the oral surgeon and was prescribed medication for his pain. In mid-January 2011, Mr. Johnson's mandibular wires were removed by the oral surgeon.

Mr. Johnson says that since the removal of those wires, he has suffered severe, ongoing pain in his jaw. He says that despite his frequent complaints to DOC personnel about his pain, the medications provided to him have been ineffective in controlling his pain. Mr. Johnson claims that over the years Dr. Mitcheff rejected numerous requests by medical and/or dental personnel that Mr. Johnson be prescribed different or higher doses of medications, leaving him with inadequately managed pain. Mr. Johnson contends Dr. Mitcheff's actions amount to deliberate indifference to his serious medical needs and violate the Eighth Amendment's prohibition on cruel and unusual punishment.

Dr. Mitcheff has moved for summary judgment on Mr. Johnson's claims. According to Dr. Mitcheff, he didn't direct the course of Mr. Johnson's treatment and wasn't the final decision-maker in Mr. Johnson's medical care, and the

actions he took in his limited role in Mr. Johnson's care were reasonable and establish that he wasn't deliberately indifferent to Mr. Johnson's serious medical needs.

STANDARD OF REVIEW

Summary judgment is appropriate when "the pleadings, depositions, answers to the interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." FED. R. CIV. P. 56(c). A genuine issue of material fact exists whenever "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986). The court's role in deciding a summary judgment motion "is not to weigh the evidence, make credibility determinations, or decide which inferences to draw from the facts, but instead to determine whether there is a genuine issue of triable fact." Bryan v. Lyons, No. 2:07-CV-344, 2010 WL 2265617, at *1 (N.D. Ind. June 2, 2010).

In deciding whether a genuine issue of material fact exists, "the evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." Anderson v. Liberty Lobby, 477 U.S. at 255; Weigle v. SPX Corp., 729 F.3d 724, 730 (7th Cir. 2013). The existence of an alleged factual dispute, by itself, won't defeat a summary judgment motion; "instead, the nonmovant must present definite, competent evidence in rebuttal," Parent v. Home Depot U.S.A., Inc., 694

F.3d 919, 922 (7th Cir. 2012), and "must affirmatively demonstrate, by specific factual allegations, that there is a genuine issue of material fact that requires trial." Hemsworth v. Quotesmith.com, Inc., 476 F.3d 487, 490 (7th Cir. 2007); *see also* FED. R. CIV. P. 56(e)(2). "[S]ummary judgment is 'not a dress rehearsal or practice run; it is the put up or shut up moment in a lawsuit, when a party must show what evidence it has that would convince a trier of fact to accept its version of events." Steen v. Myers, 486 F.3d 1017, 1022 (7th Cir. 2007)*(quoting* Hammel v. Eau Galle Cheese Factory, 407 F.3d 852, 859 (7th Cir. 2005)).

## DISCUSSION

Mr. Johnson claims that Dr. Mitcheff denied him adequate medical care and was deliberately indifferent to the pain he suffered following his treatment for a broken jaw. To establish his claim of deliberate indifference to a serious medical need in violation of the Eighth Amendment, Mr. Johnson must show that he suffered from an objectively serious medical condition and that a state official subjectively disregarded the risk to his health. Burks v. Raemisch, 555 F.3d 592, 593-594 (7th Cir. 2009). The parties don't dispute that Dr. Mitcheff was a state official, but Dr. Mitcheff claims Mr. Johnson can't meet his burden of establishing a serious medical condition, the objective element, or that he [Dr. Mitcheff] disregarded the risk to Mr. Johnson's health, the subjective element.

### Objective Element

Dr. Mitcheff claims Mr. Johnson's serious medical need wasn't pain from his fractured jaw, but was, as reported by Mr. Johnson, pain resulting from the oral surgeon's "ripping out" Mr. Johnson's nerves and muscles when he removed the mandibular wires from Mr. Johnson's jaw. According to Dr. Mitcheff, because "it was physically impossible for Dr. Smith to have ripped out Mr. Johnson's muscles and nerves when he removed his mandibular wires and that allegation does not make medical sense[, Mr. Johnson] can therefore not meet the objective element of his claim." Deft. Memo., at 16.

Mr. Johnson explains in response that in reporting his severe jaw pain to prison medical personnel, he described the pain as being so severe that when the wires were removed following his surgery, the oral surgeon must have ripped the muscles and nerves out. He says he chose to use those "strong terms" when describing the pain he was suffering to show that his pain was real, substantial, and chronic, and amounted to "an objectively serious medical condition that was accompanied by an objectively serious medical need for effective pain medication." Resp., at 12-13.

Even though the ripping out of Mr. Johnson's nerves and muscles was a medical impossibility, Mr. Johnson's use of those terms to describe the intensity of his pain doesn't make his condition medically impossible. "An objectively serious medical condition is one that 'has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would perceive the need for a doctor's attention.'" Gayton v. McCoy, 593 F.3d 610, 620

(7th Cir. 2010) (*quoting* <u>Hayes v. Snyder</u>, 546 F.3d 516, 522 (7th Cir. 2008)). Mr. Johnson's complaints of pain were diagnosed as requiring treatment, and he had been receiving treatment for his pain since 2010. Thus, Mr. Johnson has established that he has a serious medical need, leaving for decision the issue of whether Mr. Johnson can establish deliberate indifference on the part of Dr. Mitcheff.

*Subjective Element*

To prevail on the subjective element, Mr. Johnson must establish deliberate indifference: he must show that Dr. Mitcheff knew of his condition and "turned a blind eye to it," or that the treatment provided by Dr. Mitcheff was "blatantly inappropriate." <u>Pyles v. Fahim</u>, 771 F.3d 403, (7th Cir. 2014). "Evidence that [Dr. Mitcheff] acted negligently is insufficient to prove deliberate indifference. Rather, deliberate indifference is simply a synonym for intentional or reckless conduct, and that 'reckless' describes conduct so dangerous that the deliberate nature of the defendant's actions can be inferred." <u>Gayton v. McCoy</u>, 593 F.3d 610, 620 (7th Cir. 2010) (internal quotation and citations omitted). "A medical professional is entitled to deference in treatment decisions unless no minimally competent professional would have so responded under those circumstances." <u>Roe v. Elyea</u>, 631 F.3d 843, 857 (7th Cir. 2011).

Dr. Mitcheff maintains his actions establish that he wasn't deliberately indifferent to Mr. Johnson's medical needs. In support, he submits his affidavit

statements about his involvement in Mr. Johnson's care. *See* Deft. Exh. A (Mitcheff Aff.).

Dr. Mitcheff reports that from 2006 to July 4, 2014, he was the regional medical director for Correctional Medical Services, Inc. (now Corizon), the company that contracts with the Indiana Department of Correction to provide medical care to prisoners. Mitcheff Aff., ¶ 3. He says he became familiar with Mr. Johnson in 2010 when Mr. Johnson was treated at the Miami Correctional Facility for a broken jaw. Mitcheff Aff., ¶ 4. Dr. Mitcheff states that he never personally treated Mr. Johnson. Mitcheff Aff., ¶ 7.

Dr. Mitcheff explains the medical care system in the DOC this way: Medical care providers at the various prison facilities include physicians and nurse practitioners, who decide on the course of treatment for individual offenders. Mitcheff Aff., ¶ 5. Dr. Mitcheff says that "[w]hen a provider at a prison wanted to prescribe a non-formulary medication, [the provider] would submit a Non-Formulary Drug Tracking Form that would then be reviewed to see if the prescription met criteria, just like any other major health organization would do." Mitcheff Aff., ¶ 5. Dr. Mitcheff says he would review those requests and then communicate to the physician his agreement with the prescription or his suggestion of an alternative treatment plan if he didn't think the requested prescription was the best choice; Dr. Mitcheff adds that when an alternative treatment plan was suggested, the requesting physician would often call him to

discuss the matter and they would reach an agreement on the best course of treatment for the offender. Mitcheff Aff., ¶ 5.

Dr. Mitcheff says that he also reviewed requests for offenders to be referred to outside specialists for consultations, diagnostic imaging, or surgeries. Mitcheff Aff., ¶ 5. Dr. Mitcheff reports that just like his review of requests for medications, he communicated his decisions relating to referrals to the requesting physician, *i.e.* his agreement with the request or his suggestion for an alternative treatment plan. Mitcheff Aff., ¶ 5.

Dr. Mitcheff reports that even if he suggested an alternative medication or treatment plan, "the provider at the prison had the final authority and decision to proceed with the requested course of treatment regardless of my input. As Regional Medical Director, I did not make treatment decisions for offenders. Rather, I reviewed recommendations from facility physicians and sometimes provided guidance and alternative treatment suggestions." Mitcheff Aff., ¶ 5. Dr. Mitcheff insists that "regardless of [his] input, the doctor at the prison had the ultimate decision and authority regarding what medications to prescribe since he/she was the offender's primary care provider." Mitcheff Aff., ¶ 5.

Dr. Mitcheff has submitted Mr. Johnson's medical records from December 7, 2010 through June 12, 2014, the time period relevant to this action. *See* Deft. Exh. B. Dr. Mitcheff maintains those records, totaling 252 pages, show that his involvement with Mr. Johnson's medical care was very limited – over a four-year

period he had possible involvement in Mr. Johnson's medical care only eight times. Dr. Mitcheff offers the following information about those eight occasions:

December 6, 2010      A consultation request was submitted by Dr. Hornaday for Mr. Johnson to undergo oral surgery for his broken jaw. That request was approved by either Dr. Mitcheff or the associate regional medical director. Mitcheff Aff., ¶ 9.

March 22, 2011      Dr. Mitcheff received and reviewed a non-formulary drug recommendation from Dr. Marandet for Mr. Johnson to receive Tramadol (Ultram), an opioid; Dr. Mitcheff followed up with Dr. Marandet about Mr. Johnson's condition and learned that Mr. Johnson was expected to return to the oral surgeon soon; Dr. Mitcheff then "suggested an alternative treatment plan since it had been 2 months since Mr. Johnson's wires had been removed and non-opioid pain medication should be sufficient to manage pain this long after the injury. The risks of prescribing opioid pain medication at that point were not outweighed by Mr. Johnson's potential pain. Furthermore, since Mr. Johnson was to be going to the oral surgeon soon, it was prudent to wait to see what suggestions the oral surgeon had regarding pain management. However, if Dr. Marandet wanted to prescribe Tramadol for Mr. Johnson, he could have prescribed it regardless of my input since he was Mr. Johnson's treating physician." Mitcheff Aff., ¶ 10.

March 23, 2011      A non-formulary drug recommendation was submitted by Dr. Hornaday for Mr. Johnson to receive Ultram. That request was approved by either Dr. Mitcheff or the associate regional medical director. Mitcheff Aff., ¶ 11.

April 28, 2011      A non-formulary drug recommendation was submitted by Dr. Marandet for Mr. Johnson to receive Tramadol, indicating that Mr. Johnson had refused a low dose of Tegretol and TCA for pain management. Dr. Mitcheff or the associate regional medical director reviewed the request, but didn't agree that Tramadol was necessary. Dr. Mitcheff says that if he reviewed this request, he "likely did not think Tramadol was best for [Mr. Johnson] since he had declined to try a less strong pain

medication first. It is always advisable to treat chronic pain with a less strong pain medication first and if that does not work, then to try a stronger pain mediation." Dr. Mitcheff adds that "regardless of this input, Dr. Marandet could still prescribe Tramadol for Mr. Johnson since he was Mr. Johnson's primary care provider." Mitcheff Aff., ¶ 12.

| | |
|---|---|
| May 9, 2013 | A non-formulary drug recommendation was submitted by Dr. Person (treating physician at New Castle Correctional Facility) for Mr. Johnson to receive Ultram. That request was approved by either Dr. Mitcheff or the associate regional medical director, with the added suggestion that Mr. Johnson try APAP before trying Ultram. Mitcheff Aff., ¶ 13. |
| December 10, 2013 | Dr. Mitcheff received and reviewed a non-formulary drug recommendation from Deborah Perkins, N.P. for Mr. Johnson to receive Neurontin, indicating that Mr. Johnson's use of Ultram had been discontinued due to seizure activity and Neurontin worked better to control his pain. Dr. Mitcheff communicated his agreement with the recommendation. Mitcheff Aff., ¶ 14. |
| May 15, 2014 | Dr. Mitcheff received and reviewed a non-formulary drug recommendation from Deborah Perkins, N.P. for Mr. Johnson to receive an increased dosage of Neurontin, indicating that Mr. Johnson had requested the increase. Dr. Mitcheff says he recommended that Mr. Johnson "remain on the current dose, since Neurontin is a highly-trafficked drug in the prison system and rather than increase the dosage of the drug, another drug could be added to the Neurontin for pain management. However, Deborah Perkins, N.P. could still prescribe Neurontin if she wanted to regardless of my input." Mitcheff Aff., ¶ 15. |
| June 10, 2014 | Dr. Mitcheff received and reviewed a consultation request from Deborah Perkins, N.P. for Mr. Johnson to undergo an ultrasound of his right calf. Dr. Mitcheff communicated his agreement to Nurse Perkins. Mitcheff Aff., ¶ 16. |

Dr. Mitcheff reports that he had no further involvement with Mr. Johnson's medical care after July 4, 2014, when he became the Chief Medical Officer for the Indiana DOC. Dr. Mandip Bartels replaced Dr. Mitcheff as the Regional Medical Director and reviewed all later physician requests. Mitcheff Aff., ¶ 17.

Dr. Mitcheff maintains these records establish that he wasn't deliberately indifferent – he didn't act with reckless disregard toward Mr. Johnson's serious needs by inaction or woefully inadequate action. Dr. Mitcheff notes that on the three occasions he disagreed with the provider's recommendation, he didn't deny medical care to Mr. Johnson or prevent Mr. Johnson from receiving care; instead, in his role as Regional Medical Director, he provided guidance on the non-formulary medications being requested and sometimes recommended alternate courses of treatment. According to Dr. Mitcheff, Mr. Johnson's day-to-day healthcare needs were handled by the medical staff at the facility where Mr. Johnson was housed, and regardless of Dr. Mitcheff's input, his opinion on medical staff requests wasn't binding – the treating medical care provider had the ultimate decision about what medication(s) to prescribe to Mr. Johnson. Dr. Mitcheff concludes that Mr. Johnson isn't entitled to the relief he seeks and he is entitled to summary judgment on Mr. Johnson's deliberate indifference claim.

(i)

In response, Mr. Johnson first argues that "there is a genuine issue of material fact from which a reasonable trier of fact could conclude that only the

Associate Regional Medical Director reviewed and communicated an agreement" with medication recommendations approved on March 23, [2011], May 9, 2013, and December 10, 2013. Resp., at 14. Mr. Johnson contends Dr. Mitcheff refused to agree to recommendations for changes in medication on "multiple other occasions," so a reasonable trier of fact could conclude that the only time recommendations for effective pain medication were agreed to was when the recommendation was reviewed and responded to by someone other than Dr. Mitcheff.

Mr. Johnson's argument ignores Dr. Mitcheff's affidavit statements about the three requests Mr. Johnson cites. Dr. Mitcheff stated with respect to the March 23, 2011 request – "I believe that I likely reviewed this request . . . and agreed with it," Mitcheff Aff., ¶ 11; with respect to the May 9, 2013 request – "either I or the Associate Regional Medical Director agreed with the recommendation," Mitcheff Aff., ¶ 13; and with respect to the December 10, 2013 request – "I reviewed this request and agreed," Mitcheff Aff., ¶ 14. Mr. Johnson hasn't challenged Dr. Mitcheff's affidavit statements that he approved the December 10 request, likely approved the March 23 request, and could have approved the May 9 request, and so hasn't demonstrated how a reasonable trier of fact could conclude that "only" the associate regional medical director reviewed and agreed to requests for increased pain medication.

Mr. Johnson also hasn't established that "on multiple other occasions" Dr. Mitcheff refused to provide him with effective pain medication. Resp., at 14.

According to Mr. Johnson, on March 22, 2011, Dr. Mitcheff "was probably" involved in rejecting a recommendation for increased pain medication, Resp., at 5; on April 28, 2011, a recommendation for Tramadol "was not agreed to by whomever reviewed it – possibly Dr. Mitcheff," Resp., at 6; and on May 15, 2014, Dr. Mitcheff disagreed with a recommendation for an increase in a Neurontin dosage, Resp., at 6. But Mr. Johnson hasn't alleged or argued that Dr. Mitcheff's decision to recommend alternative courses of action on those dates[1] was "a significant departure from accepted professional judgment, practice, or standards." Holloway v. Delaware County Sheriff, 700 F.3d 1063, 1073 (7th Cir. 2012); *see also* Pyles v. Fahim, 771 F.3d 403, 409 (7th Cir. 2014) ("Disagreement between a prisoner and his doctor, or even between two medical professionals, about the proper course of treatment generally is insufficient, by itself, to establish an Eighth Amendment violation. The courts will not interfere with a doctor's decision to pursue a particular course of treatment unless that decision represents so significant a departure from accepted professional standards or practices that it calls into question whether the doctor actually was exercising his professional judgment.").

---

[1] *See* Mitcheff Aff., ¶ 10 (March 22, 2011: "[S]ince Mr. Johnson was to be going to the oral surgeon [the following day], it was prudent to wait to see what suggestions the oral surgeon had regarding pain management."); Mitcheff Aff., ¶ 12 (April 28, 2011: "I likely did not think Tramadol was best for [Mr. Johnson] since he had declined to try a less strong pain medication first. It is always advisable to treat chronic pain with a less strong pain medication first and if that does not work, then to try a stronger pain medication."); Mitcheff Aff., ¶ 15 (May 15, 2014: recommending that "rather than increase the dosage [of Neurontin], another drug could be added to the Neurontin for pain management").

Mr. Johnson's highlighting of a single incident of disagreement by Dr. Mitcheff over the course of four years of Mr. Johnson's treatment in the DOC – as shown by Mr. Johnson's medical records that total 252 pages with hundreds of entries, *see* Deft. Memo., Exh. B – doesn't support a finding that Dr. Mitcheff refused "on multiple occasions" to provide Mr. Johnson with effective pain medication. Mr. Johnson hasn't established that a reasonable trier of fact could conclude that "when it was Dr. Mitcheff reviewing recommendations for effective opioid pain medication or an effective Neurontin dosage, those recommendations were rejected." Resp., at 14.

(ii)

Mr. Johnson next claims genuine issues of material fact exist from which a reasonable trier of fact could conclude that Dr. Mitcheff's decision "against the provision of Tramadol/Ultram, or an increased dosage of Neurontin, did not result from his use of medical judgment, but instead resulted from concerns unrelated to basic medical judgment." Resp., at 15. Mr. Johnson complains that Dr. Mitcheff didn't identify "what if any criteria had to be met" for him to agree to a medication request, "so it is possible the criteria related to non-medical concerns, such as the cost of the recommended medication or whether it was perceived to be something that might be trafficked by prisoners as contraband." Resp., at 15. Mr. Johnson asserts that based on the severity and ongoing nature of his jaw pain, "there is a reasonable inference that Dr. Mitcheff's decision to disagree with prescribing

plaintiff a stronger medication had little or nothing to do with actual medical judgment." Resp., at 15.

Mr. Johnson's claim that Dr. Mitcheff didn't base his decisions on medical criteria or use his medical judgment in assessing medication requests ignores Dr. Mitcheff's affidavit statements about his decisions:

– March 22, 2011 request from Dr. Marandet for Mr. Johnson to receive Tramadol/Ultram: "I reviewed this request and followed up with Dr. Marandet by asking whether Mr. Johnson had an acute fracture now. Dr. Marandet replied that he did not and his wires were removed in January 2011. Dr. Marandet also responded that Mr. Johnson was expected to return to the oral surgeon soon. I suggested an alternative treatment plan since it had been 2 months since Mr. Johnson's wires had been removed and non-opioid pain medication should be sufficient to manage pain this long after the injury. The risks of prescribing opioid pain medication at that point were not outweighed by Mr. Johnson's potential pain. Furthermore, since Mr. Johnson was to be going to the oral surgeon soon, it was prudent to wait to see what suggestions the oral surgeon had regarding pain management." Mitcheff Aff., ¶ 10.

– May 15, 2014 request from Deborah Perkins, N.P. for an increase in dosage of Neurontin: "At the time, Mr. Johnson was already on 300 mg. of Neurontin twice a day and wanted an increase to 400 mg. twice a day. I reviewed this request and recommended an alternative treatment plan that

he remain on the current dose, since Neurontin is a highly-trafficked drug in the prison system, and rather than increase the dosage of the drug, another drug could be added to the Neurontin for pain management." Mitcheff Aff., ¶ 15.

– Dr. Mitcheff also addressed an April 28, 2011 request from Dr. Marandet for Tramadol that he says he may have reviewed: "Dr. Marandet indicated that Mr. Johnson had refused a low does of Tegretol and TCA for pain management. . . . The record is not clear whether I or the Associate Regional Medical Director reviewed this request but either I or the Associate Regional Medical Director did not agree that this medication was necessary and communicated that to Dr. Marandet. . . . If I reviewed this request, I likely did not think Tramadol was best for the patient, since he had declined to try a less strong pain medication first. It is always advisable to treat chronic pain with a less strong pain medication first and if that does not work, then to try a stronger pain medication." Mitcheff Aff., ¶ 12.

Mr. Johnson hasn't challenged those statements in which, contrary to Mr. Johnson's claim, Dr. Mitcheff says he evaluated the medical considerations of pain management and the problems associated with long-term use of narcotic or opioid pain medications, "particularly in patients with Hepatitis C, as Mr. Johnson had." Mitcheff Aff., ¶ 8.

Before Dr. Mitcheff can be found deliberately indifferent, Mr. Johnson must show that Dr. Mitcheff's actions were "so far afield of professional standards" so

16

as to imply that his actions or omissions were not actually based on medical judgment. <u>Duckworth v. Ahmad</u>, 532 F.3d 675, 679 (7th Cir. 2008). Mr. Johnson hasn't made that showing. Mr. Johnson speculates that the cost of medication might have been a non-medical concern of Dr. Mitcheff's, but he provides no support for his claim. He hasn't set forth a cost comparison of medications being used vs. medications being requested that might support his assertion, and his conjecture on this issue isn't evidence. Too, even if, as Mr. Johnson suggests, one of the criteria considered by Dr. Mitcheff was whether the medication being recommended might be at risk of becoming contraband if an inmate was provided the medication for pain, *see* Mitcheff Aff., ¶ 15 ("Neurontin is a highly-trafficked drug in the prison system"), Mr. Johnson hasn't suggested how that consideration was improper for the Regional Medical Director of the state's Department of Correction or amounted to deliberate indifference to his medical needs. Mr. Johnson hasn't cited to evidence from which a reasonable trier of fact could conclude that those instances of Dr. Mitcheff's disagreement with prescribing stronger medications "had little or nothing to do with actual medical judgment."

(iii)

Mr. Johnson claims the evidence demonstrates Dr. Mitcheff's ongoing disregard for Mr. Johnson's pain management needs. Resp, at 16. Mr. Johnson says Dr. Mitcheff was contacted "on multiple occasions" by a prison doctor, dentist, or nurse about his significant jaw pain, but Dr. Mitcheff "repeatedly failed

17

to inquire" about the possible cause of that pain. According to Mr. Johnson, Dr. Mitcheff failed to consider "the various factors effecting whether stronger pain medication was needed" and ask "whether the pain had recently increased or changed, whether it was accompanied by additional jaw related symptoms (clicking, swelling, or difficulty in movement), or if the plaintiff had further injured it." Resp., at 16. Mr. Johnson contends those failures on Dr. Mitcheff's part raise "an inference that although Dr. Mitcheff knew the plaintiff was suffering from ongoing significant pain, he had no concern about the need to if not eliminate, at least effectively limit the plaintiff's severe chronic jaw pain, reflecting deliberate indifference once again to the plaintiff's serious medical condition and need." Resp., at 16. The summary judgment record doesn't support Mr. Johnson's claim.

Mr. Johnson refers to Dr. Mitcheff's "ongoing disregard" for his pain, but he hasn't specified the evidence he claims demonstrates that "ongoing disregard." Mr. Johnson sets forth various questions he claims Dr. Mitcheff never asked about his condition, but he hasn't pointed to the evidence from which he ascertained the questions Dr. Mitcheff did or didn't ask, or the factors Dr. Mitcheff did or didn't consider, about his condition. Too, while Mr. Johnson claims Dr. Mitcheff "repeatedly failed to inquire" about his condition, Mr. Johnson doesn't identify the evidence he says supports his conclusory assertion, nor has he challenged Dr. Mitcheff's affidavit statements that he did review and follow-up on Mr. Johnson's pain management plan with medical providers at the facilities where Mr. Johnson was housed. *See* Mitcheff Aff., ¶¶ 5, 10, 11.

"Deliberate indifference may be inferred based upon a medical professional's erroneous treatment decision only when the medical professional's decision is such a substantial departure from accepted professional judgment, practice, or standards as to demonstrate that the person responsible did not base the decision on such a judgment. If this standard is not met, the deliberate indifference question may not go to the jury." Gayton v. McCoy, 593 F.3d 610, 622-623 (7th Cir. 2010) (citation omitted). Mr. Johnson hasn't pointed to evidence from which a factfinder could decide that Dr. Mitcheff's treatment plans and/or medical judgment "departed so substantially from the processional norm that [he] acted deliberately indifferent to [Mr. Johnson's] health. Nor can it be said that [Dr. Mitcheff's] actions were 'so dangerous' that the deliberate nature of [his] conduct can be inferred." Gayton v. McCoy, 593 F.3d 610, 623 (7th Cir. 2010).

(iv)

Mr. Johnson lastly asserts that "the evidence shows that Dr. Mitcheff exerted considerable influence and control over whether the plaintiff did or did not receive recommended pain medication at the prison." Resp., at 17. Mr. Johnson claims that "[o]n multiple occasions between 2011 and 2014, Dr. Mitcheff declined to agree with direct medical providers' recommendations to provide the plaintiff with a stronger pain medication." Resp., at 17. According to Mr. Johnson, the denial of Tramadol/Ultram or an increased dosage of Neurontin occurred after Dr. Mitcheff had reviewed requests from on-site medical personnel to provide those

medications, and if Dr. Mitcheff didn't control the direct care by medical personnel, "there would have been no requirement that [Dr.] Mitcheff review the recommendations, there would be no need to seek out his feedback, and no reason to attempt to obtain his agreement before prescribing a particular non-formulary medication to an inmate, such as the plaintiff." Resp., at 17-18. Mr. Johnson says the denial of his medications "was at the direction of, with the knowledge of, and/or at the consent of Dr. Mitcheff, thereby demonstrating that Dr. Mitcheff was sufficiently involved in the denial of effective pain medication to be liable to plaintiff for the violation of plaintiff's right to receive adequate medical care." Resp., at 18.

Mr. Johnson hasn't specified the evidence he claims demonstrates that Dr. Mitcheff controlled his right to receive increased dosages of medications, nor has he addressed Dr. Mitcheff's affidavit statement that he didn't direct the course of Mr. Johnson's treatment. Dr. Mitcheff stresses that the course of treatment for individual offenders, including Mr. Johnson, "was decided by the providers at the prisons, including the physicians and nurse practitioners." Mitcheff Aff., ¶ 5. According to Dr. Mitcheff, "regardless of my input, the doctor at the prison had the ultimate decision and authority regarding what medications to prescribe since he/she was the offender's primary care provider. . . . As Regional Medical Director, I did not make treatment decisions for offenders. Rather, I reviewed recommendations from facility physicians and sometimes provided guidance and alternative treatment suggestions." Mitcheff Aff., ¶ 5; *see also* Mitcheff Aff., ¶ 10

("[I]f Dr. Marandet wanted to prescribe Tramadol for Mr. Johnson, he could have prescribed it regardless of my input since he was Mr. Johnson's treating physician."); ¶ 13 ("Again, regardless of my input or the input of the Associate Regional Medical Director, Dr. Person could prescribe whatever he wanted and did not have to try APAP first."); ¶ 15 ("Deborah Perkins, N.P. could still prescribe Neurontin if she wanted to regardless of my input."). Mr. Johnson's conjecture about the protocol for providing medical care and requesting changes in medication at the prisons isn't evidence and doesn't negate Dr. Mitcheff's statements that treating physicians at the prisons managed Mr. Johnson's medical care and had the ultimate decision-making authority to prescribe medications to Mr. Johnson.

CONCLUSION

Based on the foregoing, the court concludes that Mr. Johnson hasn't established that Dr. Mitcheff was deliberately indifferent to his serious medical needs in violation of his right to be free from cruel and unusual punishment under the Eighth Amendment to the United States Constitution. The court GRANTS the motion of Michael A. Mitcheff for summary judgment motion on Mr. Johnson's claims against him [docket # 77], VACATES the final pretrial conference set for August 15, 2016 and the trial date of September 6, 2016, and DIRECTS the Clerk to enter judgment accordingly.

SO ORDERED.

ENTERED: __July 7, 2016__

__/s/ Robert L. Miller, Jr._____
Judge, United States District Court